420 Mass. 639                                    639

Society for Prevention of Cruelty to Animals *v.* Division of Fisheries & Wildlife.

MASSACHUSETTS SOCIETY FOR THE PREVENTION OF
CRUELTY TO ANIMALS & others[1] *vs.* DIVISION OF
FISHERIES AND WILDLIFE
(and a companion case[2]).

Suffolk. April 3, 1995. - June 20, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Animal. Trapping. Words,* "Designed," "Padded jaw trap."

The regulation governing the use of so-called "padded jaw" traps, 321
Code Mass. Regs. § 3.02 (5) is not inconsistent with G. L. c. 131,
§ 80A, which regulates the use of "steel jaw leghold" traps, and the
regulation does not permit a device that the statute prohibits. [644-645]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on October 20 and October 25, 1989, respectively.

The cases were heard by *Patrick J. King,* J., on motions
for summary judgment.

The Supreme Judicial Court granted an application for di-
rect appellate review.

*Thomas A. Barnico,* Assistant Attorney General, for Divi-
sion of Fisheries and Wildlife.

*Beth O'Neill-Maloney & Richard W. Mable (Sigmund J.
Roos* with them) for the plaintiffs.

O'CONNOR, J. The plaintiffs brought these actions in the
Superior Court to obtain judgments declaring that a certain
regulation that had been promulgated by the defendant divi-
sion of fisheries and wildlife (division) is inconsistent with

---

[1]Animal Rescue League of Boston, Massachusetts Audubon Society,
Humane Society of the United States, and American Society for the
Prevention of Cruelty to Animals.

[2]Citizens to End Animal Suffering and Exploitation, Inc., & others *vs.*
Division of Fisheries and Wildlife & others.

G. L. c. 131, § 80A (1992 ed.), and is, therefore, invalid. The regulation, set forth at 321 Code Mass. Regs. § 3.02 (5) (1989), governs the use of so-called "padded jaw traps" to trap fur-bearing mammals in Massachusetts. A judge allowed a motion to "fuse" (consolidate) the two actions. Thereafter, the plaintiffs in the two cases filed a single motion for summary judgment. The division and its director also filed a motion for summary judgment. A judge allowed the plaintiffs' motion and denied that of the defendants. The judge ordered the entry of a declaratory judgment stating, "The regulation set forth at 321 [Code Mass. Regs.] § 3.02(5) is invalid to the extent said regulation permits padded jaw traps to be used, set, placed or maintained on land, because it contravenes G. L. c. 131, § 80A." The defendants appealed and we allowed the division's application for direct appellate review. We vacate the judgment and order the entry of a judgment declaring that the regulation set forth at 321 Code Mass. Regs. § 3.02 (5) is not inconsistent with G. L. c. 131, § 80A, and is valid.

General Laws c. 131, § 80A provides in relevant part:

> "No person shall use, set, place or maintain any steel jaw leghold trap on land for the capture of fur-bearing mammals except in or under buildings on land owned, leased or rented by him. The steel jaw leghold trap may be used for the capture of fur-bearing mammals in water only if set in such a manner that all reasonable care is taken to insure that the mammal dies by drowning in a minimum length of time. No other device which is set in such a manner that it will knowingly cause continued suffering to such a mammal caught therein, or which is not designed to kill such a mammal at once or take it alive unhurt shall be used, set, placed or maintained for the capture of fur-bearing mammals . . .

> "Whoever violates any provision of this section, or of any rule or regulation made under the authority thereof,

shall be punished by a fine of not less than fifty nor more than one hundred dollars, or by imprisonment for not more than thirty days, or by both such fine and imprisonment."

The division promulgated 321 Code Mass. Regs. § 3.02 (5) on September 1, 1989, following this court's holding in *Commonwealth* v. *Black*, 403 Mass. 675, 679 (1989), that the "Woodstream Soft Catch Trapping System" was not a "steel jaw leghold trap" within the meaning of G. L. c. 131, § 80A. Title 321 Code Mass. Regs. § 3.02 (5) (b) (14) provides that, under specified conditions and with specified limitations, "[p]added jaw traps may be used for the taking of fur-bearing mammals when set in water or on land . . . ." Section 3.02 (5) (a) defines the term "[p]added jaw trap" in material part as:

"only those padded jaw traps patented and marketed as the Woodstream 'Soft-Catch' - model Numbers 1, 1½ ('Fox') and 3 ('Coyote'), or padded jaw traps of a similar type, design, and construction which conform to the following specifications. Such padded jaw traps shall be a trap of the spring-loaded type with offset jaws designed to capture a fur-bearing mammal by closing upon one of its legs and which is so constructed that the edges designed to touch the mammal are composed of a non-metallic substance which eliminates or substantially mitigates injury to the trapped mammal and which in its overall design and manufacture is designed and intended to capture fur-bearing mammals alive and unhurt when set in the manner and used for the purpose for which it is intended."

We quote representative portions of the judge's memorandum of decision in support of his order for judgment in the Superior Court: "Here, the plain language of G. L. c. 131, § 80A shows a legislative intent to prevent injury and suffering to animals. The statute prohibits the use of traps unless those traps immediately kill the animal or take the animal

'alive unhurt' without inflicting 'suffering'. The defendants urge this court to hold that the statute does not prohibit the use of padded jaw traps because the designers of these traps 'intended' to construct a trap which would take the animal unhurt. There is nothing in the statutory language of G. L. c. 131, § 80A, however, which suggests such a narrow legislative intent. The word 'designed', when considered along with the words to take the animal 'alive unhurt', must be construed to mean that in a workable, practical sense the trap's design takes animals unhurt. . . . Holding that a trap which was intended by its designers to take the animal unhurt, but that in actuality hurts animals, is a trap which G. L. c. 131, § 80A does not prohibit, would clearly defeat the Legislature's expressed intent as evidenced in the plain language of the statute. Accordingly, if the padded jaw traps authorized by the Regulation take animals alive but hurt, even though those injuries may not be severe or easily detected, its use is prohibited by G. L. c. 131, § 80A.

"In the present case, the plaintiffs have presented uncontradicted evidence, including scientific studies, that the padded jaw traps authorized by the Regulation hurt animals. . . . Indeed, it is manifest from the content of the Regulation that its drafters contemplated the use of traps which would capture animals alive hurt as opposed to 'alive unhurt' as required by G. L. c. 131, § 80A. The Regulation specifically authorizes a trap 'which eliminates or substantially mitigates injury to the trapped mammal . . . .' On this point, the defendants do not contest that, on occasion, animals are hurt by the traps. Although the padded jaw traps authorized by the Regulation may very well reduce injury to animals when compared to steel jaw traps, padded jaw traps do not capture the animals uninjured. . . .

"Given this court's interpretation of G. L. c. 131, § 80A and the uncontroverted evidence that the padded jaw traps authorized by the Regulation cause injury to animals, the defendants have failed to show that there is a genuine, triable issue of fact in the present case. Accordingly, the Regulation

will be declared invalid as inconsistent on its face with the statutory language contained in G. L. c. 131, § 80A."

We disagree with the judge's reasoning in a critical respect. We do not agree with the judge's premise, on which his ultimate conclusion is substantially or entirely based, that "[t]he statute prohibits the use of traps unless those traps immediately kill the animal or take the animal 'alive unhurt' without inflicting 'suffering.'" The Legislature did not choose such sweeping and unforgiving language. Instead, the Legislature expressly prohibited the "setting" of devices in a way that would "knowingly" produce continuing animal suffering, and also prohibited devices that are "designed" to produce such a result. The statute does not express a zero tolerance of traps that may occasionally result in fur-bearing mammals being taken alive but hurt, nor does the statute prohibit the use of a trap solely because it, or a similarly designed trap, has previously caused an animal to suffer continuing pain.

We agree with the judge that the word "designed" in the provision that "[n]o other device . . . which is not designed to kill . . . a mammal at once or take it alive unhurt shall be used, set, placed or maintained for the capture of fur-bearing mammals" does not refer to the trap designer's subjective intent but instead refers, in an objective sense, to the way in which the trap works and the results it achieves as a practical matter. The defendants, in this court at least, agree. Thus, we read the statute effectively to say, "No other device which is set in such a manner that it will knowingly cause continued suffering to . . . a mammal caught therein, or which is not [fit, adapted, prepared, suitable or appropriate] to kill . . . a mammal at once or take it alive unhurt shall be used, set, placed or maintained for the capture of fur-bearing mammals." See Black's Law Dictionary 447 (6th ed. 1990). A device that is "fit, adapted, prepared, suitable or appropriate" (i.e., designed) to kill a mammal at once or take it alive unhurt need not have a one hundred per cent success rate however. It is enough that, in the ordinary course, the desired result is accomplished. The result is that, in addition to

steel jaw leghold traps, G. L. c. 131, § 80A, prohibits any other device which is (1) set in such a manner that it will knowingly cause continued suffering to a mammal caught therein or (2) is not fit, adapted, prepared, suitable or appropriate in the ordinary course of events to kill such a mammal at once or take it alive unhurt.

The regulation in question is not inconsistent with § 80A as we construe § 80A. The regulation does not permit a device that the statute prohibits. In his memorandum of decision the judge observes, "In the present case, the plaintiffs have presented uncontradicted evidence, including scientific studies, that the padded jaw traps authorized by the Regulation hurt animals. . . . Indeed, it is manifest from the content of the Regulation that its drafters contemplated the use of traps which would capture animals alive hurt as opposed to 'alive unhurt' as required by G. L. c. 131, § 80A. The Regulation specifically authorizes a trap 'which eliminates or substantially mitigates injury to the trapped mammal . . . .' " We do not agree that the division's recognition that padded jaw traps will occasionally take an animal alive and hurt, and its authorization of a means to alleviate the harmful effect on the captured animal is inconsistent with the statute. Instead, the regulation effectively implements the statute by providing, "Such padded jaw traps shall be a trap . . . designed to capture a fur-bearing mammal by closing upon one of its legs and which is so constructed that the edges designed to touch the mammal are composed of a non-metallic substance which eliminates or substantially mitigates injury to the trapped mammal *and which in its overall design and manufacture is designed and intended to capture fur-bearing mammals alive and unhurt when set in the manner and used for the purpose for which it is intended*" (emphasis added).

The division filed numerous affidavits of trappers affirming that they had caught "thousands" of animals alive and unhurt by using padded jaw traps. The division also submitted materials describing the objective features of padded jaw traps and explaining how those features tended to make

likely the catching of animals alive and unhurt. The materials show that padded jaw traps are realistically designed to accomplish that objective. The materials also provided proof that, when set properly, a padded jaw trap is not a device that will knowingly cause continued suffering to a trapped animal. These assertions of fact were not contradicted or challenged either by the defendants' admission that occasionally padded jaw traps have caught animals alive and hurt or by any other materials made available to the judge in connection with the motions for summary judgment. We conclude, therefore, that the declaratory judgment entered in the Superior Court must be vacated and that a new judgment shall enter declaring that the regulation set forth in 321 Code Mass. Regs. § 3.02 (5) is consistent with G. L. c. 131, § 80A, and is valid.

*So ordered.*